Shannon Doyle, Esq. (SBN 207291)
GHIDOTTI BERGER LLP
1920 Old Tustin Ave
Santa Ana, CA 92705
Ph: (949) 427-2010
Fax: (949) 427-2732
bknotifications@ghidottilaw.com

Attorneys for Movant
U.S. Bank Trust National Association, as Trustee of the Lodge Series IV Trust

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SANTA ROSA DIVISION

| | |
|---|---|
| In Re:<br><br>MARIA ANGELES CUERVO<br><br>      Debtor. | CASE NO.: 24-10440<br><br>CHAPTER: 13<br><br>RS No.: SD-1<br><br>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: February 12, 2025<br>Time: 10:15 a.m.<br>Place: 99 South E Street<br>Santa Rosa, CA 95404<br><br>Judge: Hon. Dennis Montali |

**TO ALL PARTIES IN INTEREST AND TO THEIR ATTORNEYS OF RECORD:**

U.S. Bank Trust National Association, as Trustee of the Lodge Series IV Trust, its successors and/or assigns ("Movant") by and through its undersigned attorney, moves this Court for termination of all stays and injunctions, pursuant to 11 U.S.C. §362(d) and 105 and Federal Rules of Bankruptcy Procedure 4001 and 9014 and regarding the real property commonly known as 610 Wild Oak Dr Windsor, CA 95492, ("Property") so that moving party may commence and continue all acts necessary to foreclose under the Deed of Trust and secure possession of the Property.

This Court has subject matter jurisdiction over this Motion under the provisions of 28 U.S.C. §§ 157(b) and 1334 and 11 U.S.C. § 362. Venue in this Court is proper under the provisions of 28 U.S.C. §§ 1408 and 1409.

Maria Angeles Cuervo ("Debtors") filed a petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court, Case No. 24-10440 on August 22, 2024.

David Burchard is the duly appointed Chapter 13 Trustee.

On or about July 25, 2007, Maria Cuervo, executed a promissory note in the principal sum of $331,500.00 (the "Note"). The Note is endorsed in blank. Movant, directly or through an agent, has possession of the original Note and is entitled to enforce the Note. A copy of the Note is attached to the Declaration in Support of Movant's Motion for Relief from Stay ("Declaration") as **Exhibit1.**

The Note is secured by a Deed of Trust (the "Deed of Trust") executed by the Debtor encumbering the Property and recorded in the Sonoma County Recorder's Office as Instrument No. 2007086559. The Note and Deed of Trust are collectively referred to herein as the "Loan". A copy of the Deed of Trust is attached to the Declaration in Support of the Motion as **Exhibit 2.**

Movant is the current beneficiary under the Deed of Trust. A complete copy of the chain of the Assignments of Deed of Trust is attached to the Declaration in Support of the Motion as **Exhibit 3.**

As of November 15, 2024 the total outstanding due under the Note is approximately $409,363.72. This is an approximate amount for the purpose of this Motion only. An exact payoff figure can be obtained upon request.

Movant alleges that "cause" exists to terminate the automatic stay under 11 U.S.C. § 362(d)(1). "Cause" to grant relief from stay under Section 362(d)(1) when a debtor has failed to make consistent and timely post-petition payments to his/her secured creditors. *See e.g. Pistole v. Mellor (In re Mellor),* 734 F.2d 1396 (9thCir. 1984); *In re Harlan*, 783 F.2d 839 (BAP 9thCir. 1986); *In re Ellis*, 60 B.R. 432 (BAP 9th Cir. 1985). Where cause is shown, courts have no discretion, but must grant relief. *In re Ford,* 36 B.R. 501 (Dt 1983).

Here, Movant is not receiving regular monthly payments.  Debtor failed to tender four postpetition payments for the subject loan for the months of September 1, 2024 through December 1, 2024.  A copy of the Postpetition Payment History is attached to the Declaration in Support of the Motion as **Exhibit 4**.  As of November 15, 2024, the following postpetition mortgage payments are in default:

| | | |
|---|---|---|
| Monthly payments: | 4 at $1,935.23 (09/01/24 – 12/01/24) | $7,740.92 |
| MFR Legal Fees & Costs | | $1,249.00 |
| Attorney Fees: | | $1,750.00 |
| Suspense: | | ($1,800.00) |
| **Total Delinquencies:** | | **$8,939.92** |

The sums set forth in this motion do not include any late charges, escrow advances, or attorney's fees/costs, and other fees and charges that might otherwise be included in the event that a payoff is requested or provided.

The next scheduled monthly payment of $1,935.23 is due January 1, 2025, and continuing on the first day of each month thereafter.  However, this amount may be subject to change pursuant to the terms of the applicable loan documents.

Failure to tender periodic cash payments to Movant provides sufficient "cause" to grant relief.  Accordingly, relief from the automatic stay should be granted to Movant pursuant to 11 U.S.C. §362(d)(1).

WHEREFORE, Movant respectfully request that this Court issue an Order as follows:

1.  For an Order granting relief form the automatic stay, permitting Movant to proceed with the foreclosure under Movant's Deed of Trust, and to sell the Property at a trustee's sale under the terms of the Deed of Trust to proceed with any and all post foreclosure sale remedies, including the unlawful detainer action or any other action necessary to obtain possession of the Property.

2.  For an Order that the fourteen day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.  For attorneys' fees and costs incurred herein.

4.  For an Order that the Moving Party, at its option, may offer, provide and enter into

any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement as allowed by state law. The Movant may contact the Debtor via telephone or written correspondence to offer such an agreement. Any such agreement shall be non-recourse.

5.     For an Order permitting the Movant to contact the Debtor to comply with California Civil Code Section 3923.5.

6.   For such other relief as the Court deems proper.


Dated: December 6, 2024                    GHIDOTTI BERGER, LLP


/s/ Shannon Doyle
Shannon Doyle, Esq.
Attorneys for Movant

# EXHIBIT "1"

 

Prepared by: ERIC CARR

# ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

JULY 25, 2007                    LAKE FOREST                    CALIFORNIA
[Date]                              [City]                        [State]

610 WILD OAK DR, WINDSOR, CA 95492-8918
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 331,500.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
Countrywide Home Loans, Inc. dba America's Wholesale Lender
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   10.600 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay Principal and interest by making a payment every month.
I will make my monthly payment on the   first          day of each month beginning on
 SEPTEMBER 01, 2007   . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   AUGUST 01, 2047       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.
### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $2,971.87          . This amount may change.
### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the   first          day of AUGUST, 2012       , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* . The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX & ONE-HALF          percentage point(s) (   6.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**CALIFORNIA ADJUSTABLE RATE NOTE - LIBOR INDEX - Single Family**
● BC - ARM Note
2D159-CA (12/05)(d)                              Page 1 of 3

Case: 24-10440   Doc# 21   Filed: 12/06/24   Entered: 12/06/24 08:55:54   Page 6 of 54





The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   13.600 % or less than 10.600 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF        percentage point(s) (   1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than   17.600 % or less than   10.600 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note. My Partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my Partial Prepayment. However, any reduction due to my Partial Prepayment may be offset by an interest rate increase.

☐  I may prepay this Note in full at any time without penalty.

☒  If within the first TWELVE                months after the execution of the Note, I make any prepayment(s) within any 12-month period, the total of which exceeds 20 percent (20%) of the original principal amount of this loan, I will pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds 20 percent (20%) of the original Principal amount of the loan.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN           calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

Case: 24-10440    Doc# 21    Filed: 12/06/24    Entered: 12/06/24 08:55:54    Page 7 of 54



## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
MARIA CUERVO                                    -Borrower

_____
                                                -Borrower

_____
                                                -Borrower

_____
                                                -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC., A NEW YORK CORPORATION
DOING BUSINESS AS AMERICA'S WHOLESALE LENDER

BY: _____
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

Case: 24-10440    Doc# 21    Filed: 12/06/24    Entered: 12/06/24 08:55:54    Page 8 of 54

# EXHIBIT "2"

**RECORDING REQUESTED BY**
**OLD REPUBLIC TITLE CO. - O.C.**

**2007086559**

OFFICIAL RECORDS OF
SONOMA COUNTY
JANICE ATKINSON
**23** PGS

GENERAL PUBLIC
08/02/2007 13:07 TRD
RECORDING FEE: 73.00
PAID

COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
ERIC CARR

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  JULY 25, 2007          , together with all Riders to this document.
**(B) "Borrower"** is
MARIA CUERVO, AN UNMARRIED WOMAN

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 16
VMP®-6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291          Form 3005 1/01
CONV/VA

Borrower's address is
610 WILD OAK DR, WINDSOR, CA 95492-8918
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
Countrywide Home Loans, Inc. dba America's Wholesale Lender
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(D) "Trustee" is
RECON TRUST COMPANY, N.A.
225 WEST HILLCREST DRIVE MSN TO-02, THOUSAND OAKS, CA 91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this
Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated JULY 25, 2007 . The
Note states that Borrower owes Lender
THREE HUNDRED THIRTY ONE THOUSAND FIVE HUNDRED and 00/100

Dollars (U.S. $ 331,500.00 ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than AUGUST 01, 2047 .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

VMP -6A(CA) (0207)          CHL (08/05)              Page 2 of 16                    Form 3005 1/01

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY of SONOMA :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of

610 WILD OAK DR, WINDSOR
[Street/City]

California 95492-8918 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(CA) (0207)          CHL (08/05)          Page 3 of 16          Form 3005 1/01

Case: 24-10440   Doc# 21   Filed: 12/06/24   Entered: 12/06/24 08:55:54   Page 12 of 54

# Exhibit "A"

A portion of Bartlett Street (abandoned) as shown upon the map of Martin's Addition to the town of Windsor, filed in the office of the county recorder of Sonoma County, California on July 13, 1892 in book 10 of maps at page 17, being more particularly described as follows:

Beginning at the northwest corner of lot 18, block 2 of said subdivision; thence south 0 degrees 39' west, 140 feet to the southwest corner of said lot 18; thence north 89 degrees 15' west, 60 feet to the southeast corner of lot 9, block 3 of said subdivision; thence north 0 degrees 39' east, 140 feet to the northeast corner of said lot 9; thence south 89 degrees 15' east, 60 feet to the point of beginning.

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

Case: 24-10440    Doc# 21    Filed: 12/06/24    Entered: 12/06/24 08:55:54    Page 14 of 54

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

Case: 24-10440    Doc# 21    Filed: 12/06/24    Entered: 12/06/24 08:55:54    Page 15 of 54

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

Case: 24-10440   Doc# 21   Filed: 12/06/24   Entered: 12/06/24 08:55:54   Page 16 of 54

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Case: 24-10440   Doc# 21   Filed: 12/06/24   Entered: 12/06/24 08:55:54   Page 17 of 54

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided·in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Case: 24-10440    Doc# 21    Filed: 12/06/24    Entered: 12/06/24 08:55:54    Page 19 of 54

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Case: 24-10440     Doc# 21     Filed: 12/06/24     Entered: 12/06/24 08:55:54     Page 20 of 54

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Case: 24-10440   Doc# 21   Filed: 12/06/24   Entered: 12/06/24 08:55:54   Page 21 of 54

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

Case: 24-10440   Doc# 21   Filed: 12/06/24   Entered: 12/06/24 08:55:54   Page 22 of 54

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

Case: 24-10440    Doc# 21    Filed: 12/06/24    Entered: 12/06/24 08:55:54    Page 23 of 54

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Case: 24-10440   Doc# 21   Filed: 12/06/24   Entered: 12/06/24 08:55:54   Page 24 of 54

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Maria Q. Cuervo_ _____ (Seal)
MARIA CUERVO                          -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

Case: 24-10440    Doc# 21    Filed: 12/06/24    Entered: 12/06/24 08:55:54    Page 25 of 54

State of California
County of **SONOMA** } ss.

On __7-26-2007__ before me, __FRANCES C. Reilly, Notary Public__

personally appeared

__MARIA A. CUERVO__

_____ , ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Frances C. Reilly_ (Seal)

FRANCES C. REILLY
Commission #
Notary Public - California
Sonoma County
My Comm. Expires Oct 15, 2008

Case: 24-10440    Doc# 21    Filed: 12/06/24    Entered: 12/06/24 08:55:54    Page 26 of 54

Prepared by: ERIC CARR

**Countrywide Home Loans, Inc. dba America's Wholesale Lender**

Branch #:
1900 S STATE COLLEGE BLVD  4&5
ANAHEIM, CA 92806
Phone: (800)669-6089
Br Fax No.: (N)

DATE:          07/25/2007
CASE #:
DOC ID #:
BORROWER: MARIA CUERVO
PROPERTY ADDRESS: 610 WILD OAK DR
                 WINDSOR, CA 95492-8918

## LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
- Legal Description Exhibit A
1C404-XX (04/03)(d)

# ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this TWENTY-FIFTH day of JULY, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to Countrywide Home Loans, Inc. dba America's Wholesale Lender

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

610 WILD OAK DR, WINDSOR, CA 95492-8918

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX** - Single Family
CONV
● BC - ARM Rider
1U193-US (12/05)(d)                    Page 1 of 4

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of    10.600 %.  The  Note  provides  for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the  first              day of AUGUST, 2012            , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as  published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each  Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable  information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX & ONE-HALF              percentage point(s) (   6.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the  unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than   13.600 % or less than    10.600  %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF percentage point(s) (   1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than      17.600  % or less than   10.600 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly  payment beginning on the first monthly payment date after the Change Date until the amount of my monthly  payment changes again.

CONV
● BC - ARM Rider
1U193-US (12/05)

Case: 24-10440    Doc# 21    Filed: 12/06/24    Entered: 12/06/24 08:55:54    Page 29 of 54

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
● BC - ARM Rider
1U193-US (12/05)                    Page 3 of 4

Case: 24-10440    Doc# 21    Filed: 12/06/24    Entered: 12/06/24 08:55:54    Page 30 of 54

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
MARIA CUERVO                                                      - Borrower

_____ (Seal)
                                                                  - Borrower

_____ (Seal)
                                                                  - Borrower

_____ (Seal)
                                                                  - Borrower

CONV
● BC - ARM Rider
1U193-US (12/05)                    Page 4 of 4

# EXHIBIT A

The land referred to is situated in the County of Sonoma, City of Windsor, State of California, and is described as follows:

A portion of Bartlett Street (abandoned) as shown upon the Map of Martin's Addition to the Town of Windsor, Filed in the Office of the County Recorder of Sonoma County, California on July 13, 1892 in Book 10 of Maps at Page 17, being more particularly described as follows:

Beginning at the Northwest corner of Lot 18, Block 2 of said Subdivision; thence South 0° 39' West, 140 feet to the Southwest corner of said Lot 18; thence North 89° 15' West, 60 feet to the Southeast corner of Lot 9, Block 3 of said Subdivision; thence North 0° 39' East, 140 feet to the Northeast corner of said Lot 9; thence South 89° 15' East, 60 feet to the point of beginning.

# EXHIBIT "3"

RECORDING REQUESTED BY:

RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT**

**AND TAX STATEMENTS TO:**

RECONTRUST COMPANY

1757 TAPO CANYON ROAD, SVW-88

SIMI VALLEY, CA 93063

**2011033421**

OFFICIAL RECORDS OF
SONOMA COUNTY
JANICE ATKINSON

TITLE COURT SERVICE
04/14/2011 10:52 ASGTTD
RECORDING FEE: $13.00
PAID

**1** PG



SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

**BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 07/25/2007, EXECUTED BY: MARIA CUERVO, AN UNMARRIED WOMAN, TRUSTOR: TO RECON TRUST COMPANY, N.A., TRUSTEE AND RECORDED AS INSTRUMENT NO. 2007086559 ON 08/02/2007, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF SONOMA COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED: ~~May 28, 2008~~ APR 1 1 2011

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

BY: _____ 4/11/2011

Kevin Rudolph, Assistant Secretary

State of: **California** )

County of: **Ventura** )

R.J GREEAR

On **APR 1 1 2011** before me, _____, notary public, personally appeared
**Kevin Rudolph** _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

R.J GREEAR

R. J. GREEAR
Commission #
Notary Public - California
Ventura County
My Comm. Expires Dec 8, 2011

*Form asgnmnt (01/09)*

Case: 24-10440   Doc# 21   Filed: 12/06/24   Entered: 12/06/24 08:55:54   Page 34 of 54

**2011056670**

Recording Requested By:
**Bank of America**
Prepared By: **Mercedes Judilla**
450 E. Boundary St.
Chapin, SC 29036
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

OFFICIAL RECORDS OF
SONOMA COUNTY
JANICE ATKINSON

GENERAL PUBLIC
07/06/2011 08:30 ASGTTD
RECORDING FEE: $13.00
PAID

**1** PG



Property Address:
**610 Wild Oak Dr**
**Windsor, CA 95492-8918**
CA0-ADT 14112526          6/15/2011

This space for Recorder's use

MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474** does hereby grant, sell, assign, transfer and convey unto **BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME   LOANS SERVICING, LP** whose address is **400 NATIONAL WAY, SIMI VALLEY, CA 93065** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:              **COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER**
Original Borrower(s):    **MARIA CUERVO, AN UNMARRIED WOMAN**
Original Trustee:           **RECON TRUST COMPANY, N.A.**
Date of Deed of Trust:   7/25/2007
Original Loan Amount:   $331,500.00

Recorded in **Sonoma County**, CA on: 8/2/2007, book N/A, page N/A and instrument number 2007086559

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

*6/22/11*

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: _____

**Christopher Herrera, Assistant Secretary**

State of **California**
County of **Ventura**

On **6-22-2011** before me, Norma Rojas, Notary Public, personally appeared **Christopher Herrera**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

_____
Notary Public: **Norma Rojas**
My Commission Expires: 2/14/2015

(Seal)

NORMA ROJAS
Commission #
Notary Public - California
Ventura County
My Comm. Expires Feb 14, 2015

RECORDING REQUESTED BY:

Stewart Title Guaranty F/K/A Landsafe Default Inc

AND WHEN RECORDED MAIL TO:
The Wolf Firm
2955 Main Street, 2nd Floor
Irvine, California 92614
(949) 720-9200

**2014061340**
Official Records Of Sonoma County
William F. Rousseau
09/02/2014 02:20 PM
DOCUMENT PROCESSING SOLUTION
SBST 1 Pgs
Fee: $13.00



_____ ABOVE THIS LINE FOR RECORDER'S USE

**610 WILD OAK DRIVE, WINDSOR, CA 95492**

# SUBSTITUTION OF TRUSTEE

**WHEREAS, MARIA CUERVO, AN UNMARRIED WOMAN** was the original Trustor, **RECON TRUST COMPANY, N.A.** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), AS A NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER, A CORPORATION** was the original Beneficiary under that certain Deed of Trust dated **7/25/2007** and recorded on **8/2/2007** as Instrument No. **2007086559** of Official Records of **Sonoma** County, California; and

**WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE,** the undersigned hereby substitutes **The Wolf Firm, A Law Corporation, 2955 Main Street, 2nd Floor, Irvine, California 92614** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.
Dated: _August 22, 2014_

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP

_Courtney Morgan_
_Courtney Morgan Assistant Vice President_

STATE of _Texas_
COUNTY of _Dallas_

Before me, _Launi Dee Cooper_ , the undersigned officer, on this, the _22_ day of _August_ , 20 _14_, personally
(insert name of notary)
appeared _Courtney Morgan_ , ☐ known to me or, ☑ through production of _a Texas Driver's License_ as identification,
(insert name of signer)
who identified her/himself to be the _Assistant Vice President_ of _Bank of America, N.A._ , the person and
officer whose name is subscribed to the foregoing instrument, and being authorized to do so, acknowledged that (s)he had executed the
foregoing instrument as the act of such corporation for the purpose and consideration described and in the capacity stated.

(seal)

_Launi Dee Cooper_
(Type or print name below signature)

LAUNI DEE COOPER
MY COMMISSION EXPIRES
July 8, 2018

Notary Public, State of _Texas_
Commission No.: _____
My Commission Expires: _July 08, 2018_

Case: 24-10440   Doc# 21   Filed: 12/06/24   Entered: 12/06/24 08:55:54   Page 36 of 54

## 2015013421

Official Records Of Sonoma County
William F. Rousseau
02/20/2015 11:42 AM
DPS INC

**ASGTTD 2 Pgs**
Fee: $22.00



### STEWART TITLE

RECORDING REQUESTED BY AND WHEN RECORDED RETURN TO:
CALIBER HOME LOANS
13801 Wireless Way
Oklahoma City, OK 73134

Prepared By:      **Anurag Gupta**

MERS Min:

Parcel ID::

Space Above This Line For Recorder's Use

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP** whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063,** hereby grants, assigns and transfers to **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST** whose address is **13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134** all beneficial interest under that certain Deed of Trust dated 07/25/2007 executed by MARIA A CUERVO to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS in the amount of $331,500.00 and recorded on 8/2/2007 as Instrument # 2007086559, in Book/Volume or Liber No. N/A , Page/folio N/A of Official Records in the County Recorder's office of SONOMA County, CA, describing land herein as: 'SEE ATTACHED 'EXHIBIT A'

Property Address:      **610 WILD OAK DR, WINDSOR CA 95492**

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Witness #1 _____ *Aurelio Cuervo*

Witness #2 _____ *Gary Jacobi*

**BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP, BY CALIBER HOME LOANS INC., AS ITS ATTORNEY IN FACT**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

By: ___Jason Origer___

Title: **Ass't Vice President**

County of San Diego )
State of California )

On **February** **9**, **2015** before me, *Lydia Sarah Rodriguez* a Notary Public, personally appeared, *Jason Origer*, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand official seal, _____

Notary Name: *Lydia Sarah Rodriguez*      My Commission Expires: Jun 8, 2017

> LYDIA SARAHI RODRIGUEZ
> Commission #
> Notary Public - California
> San Diego County
> My Comm. Expires Jun 8, 2017

Case: 24-10440    Doc# 21    Filed: 12/06/24    Entered: 12/06/24 08:55:54    Page 37 of 54

# LEGAL DESCRIPTION

## EXHIBIT "A"

A portion of Bartlett Street (abandoned) as shown upon the map of Martin's Addition to the town of Windsor, filed in the office of the county recorder of Sonoma County, California on July 13, 1892 in book 10 of maps at page 17, being more particularly described as follows:

Beginning at the northwest corner of lot 18, block 2 of said subdivision; thence south 0 degrees 39' west, 140 feet to the southwest corner of said lot 18; thence north 89 degrees 15' west, 60 feet to the southeast corner of lot 9, block 3 of said subdivision; thence north 0 degrees 39' east, 140 feet to the northeast corner of said lot 9; thence south 89 degrees 15' east, 60 feet to the point of beginning.

# 2015025484

Official Records Of Sonoma County
William F. Rousseau
03/27/2015 02:05 PM
DPS INC

**SBST 2 Pgs**
Fee: $16.00



8

Recording requested by:

When recorded mail to:

Caliber Home Loans – FCL Dept.
16745 W. Bernardo Drive, Ste 300
San Diego, CA 92127

pace above this line for recorders use

## Substitution of Trustee

WHEREAS, **MARIA CUERVO, AN UNMARRIED WOMAN** was the original Trustor, **RECON TRUST COMPANY, N.A.** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS** was the original Beneficiary under that certain Deed of Trust dated **7/25/2007** and recorded on **8/2/2007** as Instrument No. **2007086559**, in book **xxx**, page **xxx** of Official Records of **SONOMA** County, **CA**; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes **SUMMIT MANAGEMENT COMPANY, LLC,** whose address is **16745 W. Bernardo Dr. Suite 100, San Diego, CA 92127** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Case: 24-10440    Doc# 21    Filed: 12/06/24    Entered: 12/06/24 08:55:54    Page 39 of 54

Substitution of Trustee - CA
TS #
Page 2

Dated: _3-23-15_

U.S. Bank Trust, N.A., as Trustee for LSF9 Master
Participation Trust, by Caliber Home Loans, Inc., as its
attorney in fact

By: **Erin Naylor**  Authorized Signatory

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of **California** )
County of **San Diego** )

On March 23, 2015, before me, Lydia Sarahi Rodriguez, a notary public, personally appeared Erin Naylor, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his authorized capacity and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

LYDIA SARAHI RODRIGUEZ
Commission #
Notary Public - California
San Diego County
My Comm. Expires Jun 8, 2017

Recording Requested By:
Mission Global, LLC - GS Lonestar June 2020 RPL

When Recorded Return To:

Sean Hunt
Mission Global, LLC
5701 E. Hillsborough Ave, Suite 1231
Tampa, FL 33610

**2020104945**

Official Records Of Sonoma County
Deva Marie Proto
11/09/2020 01:53 PM
GENERAL PUBLIC

**ASGTTD 2 Pgs**

Fee: $92.00

PAID



## CORPORATE ASSIGNMENT OF DEED OF TRUST

**Sonoma, California**
**Mission Global LLC - GS LoneStar June 2020 RPL WLP#: 23426712, "CUERVO,"**

**Prepared By: Sean Hunt, Mission Global, LLC 5701 E. Hillsborough Ave, Suite 1231  Tampa, FL, 33610 813-563-6777**

For Value Received, U.S BANK TRUST N.A. AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST BY ITS ATTORNEY IN FACT MISSION GLOBAL, LLC hereby grants, assigns and transfers to MTGLQ INVESTORS, L.P. at 2001 ROSS AVE, SUITE 2800, DALLAS, TX 75201 all its interest under that certain Deed of Trust dated 07-25-2007, in the amount of $331,500.00, executed by MARIA CUERVO, AN UNMARRIED WOMAN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER  ITS SUCCESSORS AND ASSIGNS and Recorded: 08-02-2007 as Instrument No.: 2007086559 in the County of Sonoma, State of California.

Property Address: 610 WILD OAK DR, WINDSOR, CA  95492-8918

In witness whereof this instrument is executed.

U.S BANK TRUST N.A. AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST BY ITS ATTORNEY IN FACT MISSION GLOBAL, LLC
On October 28th, 2020

Shannon Grenier, Assistant Secretary

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Florida
COUNTY OF Hillsborough

On October 28th, 2020, before me, Alyssa Uptegraff, a Notary Public in and for Hillsborough in the State of Florida, personally appeared Shannon Grenier, Assistant Secretary of MISSION GLOBAL, LLC AS ATTORNEY IN FACT FOR U.S BANK TRUST N.A. AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

The foregoing instrument was acknowledged before me by means of _X_ physical presence or ___ online notarization

WITNESS my hand and official seal,

Alyssa Uptegraff
Notary Expires: 3/12/2024

ALYSSA UPTEGRAFF
Commission # :
Expires March 12, 2024
Bonded Thru Troy Fain Insurance 800-385-7019

**This document was electronically submitted to the County of Sonoma for recording**

# 2021079584

Official Records of Sonoma County
Deva Marie Proto
07/09/2021 10:43 AM
MERIDIAN ASSET SERVICES - API

ASGTTD 2 Pgs

Fee: $92.00



Recording Requested By:
_____

Prepared By: **AUDREY B TRUMBLE**
**3001 Hackberry Rd**
**Irving, TX 75063**
**855-369-2410**
When recorded mail to:
_____

Case Nbr: ▓▓▓▓▓
Ref Number: ▓▓▓▓▓
Property Address:
**610 WILD OAK DR**
**WINDSOR, CA 95492**
CA0-ADT-STD ▓▓▓ 6/2/2021 SITUS-INT

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **2001 ROSS AVENUE, SUITE 2800, DALLAS, TX 75201** does hereby grant, sell, assign, transfer and convey unto **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE TIKI SERIES IV TRUST** whose address is **7114 E STETSON DRIVE, SUITE 250, SCOTTSDALE, AZ 85251** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC, DBA AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS**

Original Borrower(s): **MARIA CUERVO, AN UNMARRIED WOMAN**

Original Trustee: **RECON TRUST COMPANY, N.A.**

Date of Deed of Trust: **7/25/2007**

Original Loan Amount: **$331,500.00**

Recorded in **Sonoma County, CA** on: **8/2/2007**, book **N/A**, page **N/A** and instrument number **2007086559**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

**6/3/2021**

MTGLQ INVESTORS, L.P. BY CORELOGIC
SOLUTIONS, LLC, ITS ATTORNEY IN FACT

By: _____

**Jessica Delpit, Assistant Vice President**

State of **TX**, County of **Dallas**

On **6/3/2021**, before me, **Ratanaphone Vilayleuth**, a Notary Public, personally appeared **Jessica Delpit, Assistant Vice President** of **CORELOGIC SOLUTIONS, LLC AS ATTORNEY IN FACT FOR MTGLQ INVESTORS, L.P.** personally known to me to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they of his/her/their free act and deed executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____
Notary Public: **Ratanaphone Vilayleuth**
My Commission Expires :  **3/6/2024**



RATANAPHONE VILAYLEUTH
Notary Public, State of Texas
Comm. Expires 03-06-2024
Notary

**This document was electronically submitted
to the County of Sonoma for recording**

# 2024035719

Official Records of Sonoma County
Deva Marie Proto
08/07/2024 08:00 AM
MERIDIAN ASSET SERVICES - API

ASGTTD 2 Pgs

Fee: $94.00



Recording Requested By
Meridian Asset Services, LLC

Prepared By and Return To:
**Murat Deniz**
Meridian Asset Services, LLC
140 Fountain Parkway N Suite 100
St. Petersburg, FL 33716
(239) 351-2442

_____ Space above for Recorder's use _____

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE FOR LODGE SERIES IV TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 7/25/2007
Original Loan Amount: **$331,500.00**
Executed by (Borrower(s)): **MARIA CUERVO**
Original Trustee: **RECON TRUST COMPANY, N.A.**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book N/A, Page **N/A**
Document/Instrument No: **2007086559** in the Recording District of **Sonoma, CA**, Recorded on **8/2/2007**.


Property more commonly described as: **610 WILD OAK DR, WINDSOR, CALIFORNIA 95492-8918**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **7/31/2024**

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **TRISTAN CORDER**
Title: **VICE PRESIDENT**

Witness Name: **ISABEL LOPEZ**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of **FLORIDA**
County of **PINELLAS**

On **7/31/2024**, before me, **JUSTIN CALITRO**, a Notary Public, personally appeared **TRISTAN CORDER, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST**, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that TRISTAN CORDER, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_____

(Notary Name): **JUSTIN CALITRO**
My commission expires: 5/3/2027

**JUSTIN CALITRO**
Notary Public
State of Florida
Comm#
Expires 5/3/2027

FLORIDA NOTARY ASSOCIATION · SINCE 1976 ·

# EXHIBIT "4"

| Borrower: CUERVO | | | | Telephone: | | | | SSN: *****9870 | | | | | | | | |

| Effective Date | Transaction Date | Due Date | Transaction Description | Batch Desc | Sub Code | Batch Id | Trans. Amt | Principal Amount | Principal Balance | Arrearage / Forbearance Prin | Interest Amount | Unapplied Amount | Unapplied Balance | Escrow Amount | Escrow Balance | Late Charge Amt | Late Charge Balance | Assistance Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/4/2021 | 3/4/2021 | 6/1/2020 | New Loan | | 0 | 0 | $.00 | $415,879.17 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | $.00 | $.00 | $.00 | $.00 |
| 3/5/2021 | 3/5/2021 | 6/1/2020 | Escrow Adjustment | | 0 | 0 | ($1,617.13) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | ($1,617.13) | ($1,617.13) | $.00 | $.00 | $.00 |
| 3/5/2021 | 3/5/2021 | 6/1/2020 | Prior Serv Corp Adv Assessment | | 96 | 0 | ($15.00) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($1,617.13) | $.00 | $.00 | $.00 |
| 3/4/2021 | 3/10/2021 | 6/1/2020 | Unapplied Payment | 3000-47-PA | 0 | 107459 | $119.83 | $.00 | $415,879.17 | $0.00 | $.00 | $119.83 | $119.83 | $.00 | ($1,617.13) | $.00 | $.00 | $.00 |
| 3/12/2021 | 3/12/2021 | 4/10/2021 | County Tax Disbursement | property taxes MR 03/12 | 30 | 107684 | ($820.38) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $119.83 | ($820.38) | ($2,437.51) | $.00 | $.00 | $.00 |
| 5/17/2021 | 5/18/2021 | 5/1/2021 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $119.83 | $.00 | ($2,437.51) | ($63.76) | $63.76 | $.00 |
| 6/10/2021 | 6/10/2021 | 6/1/2020 | Unapplied Payment Reversal | 45-PA | 0 | 119779 | ($119.83) | $.00 | $415,879.17 | $0.00 | $.00 | ($119.83) | $.00 | $.00 | ($2,437.51) | $.00 | $63.76 | $.00 |
| 6/10/2021 | 6/10/2021 | 6/1/2020 | Late Charge Payment | 45-PA | 0 | 119779 | $63.76 | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($2,437.51) | $63.76 | $.00 | $.00 |
| 6/10/2021 | 6/10/2021 | 6/1/2020 | Prior Serv Corp Adv Payment | 45-PA | 96 | 119779 | $15.00 | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($2,437.51) | $.00 | $.00 | $.00 |
| 6/10/2021 | 6/10/2021 | 6/1/2020 | Escrow Only Payment | 45-PA | 0 | 119779 | $41.07 | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $41.07 | ($2,396.44) | $.00 | $.00 | $.00 |
| 6/17/2021 | 6/17/2021 | 6/1/2021 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($2,396.44) | ($63.76) | $63.76 | $.00 |
| 6/17/2021 | 6/17/2021 | 7/9/2021 | Homeowners Policy Disbursement | HOI | 15 | 120832 | ($1,081.42) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | ($1,081.42) | ($3,477.86) | $.00 | $63.76 | $.00 |
| 7/17/2021 | 7/17/2021 | 7/1/2021 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($3,477.86) | ($63.76) | $127.52 | $.00 |
| 8/17/2021 | 8/17/2021 | 8/1/2021 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($3,477.86) | ($63.76) | $191.28 | $.00 |
| 9/3/2021 | 9/3/2021 | 6/1/2020 | Late Charge Waiver | | 0 | 0 | $63.76 | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($3,477.86) | $63.76 | $127.52 | $.00 |
| 9/17/2021 | 9/29/2021 | 9/1/2021 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($3,477.86) | ($63.76) | $191.28 | $.00 |
| 9/29/2021 | 9/29/2021 | 9/1/2021 | Late Charge Waiver | | 0 | 0 | $63.76 | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($3,477.86) | $63.76 | $127.52 | $.00 |
| 10/17/2021 | 10/19/2021 | 10/1/2021 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($3,477.86) | ($63.76) | $191.28 | $.00 |
| 10/19/2021 | 10/19/2021 | 10/1/2021 | Late Charge Waiver | | 0 | 0 | $63.76 | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($3,477.86) | $63.76 | $127.52 | $.00 |
| 11/17/2021 | 11/17/2021 | 11/1/2021 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($3,477.86) | ($63.76) | $191.28 | $.00 |

**Loan History - General**

| | Borrower: CUERVO | | | Telephone: | | | | SSN: *****9870 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Effective Date | Transaction Date | Due Date | Transaction Description | Batch Desc | Sub Code | Batch Id | Trans. Amt | Principal Amount | Principal Balance | Arrearage / Forbearance Prin | Interest Amount | Unapplied Amount | Unapplied Balance | Escrow Amount | Escrow Balance | Late Charge Amt | Late Charge Balance | Assistance Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/2/2021 | 12/2/2021 | 12/10/2021 | County Tax Disbursement | PropertyTax-120221-tt | 30 | 143808 | ($3,139.01) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | ($3,139.01) | ($6,616.87) | $.00 | $191.28 | $.00 |
| 12/17/2021 | 12/17/2021 | 12/1/2021 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($6,616.87) | ($63.76) | $255.04 | $.00 |
| 1/17/2022 | 1/18/2022 | 1/1/2022 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($6,616.87) | ($63.76) | $318.80 | $.00 |
| 1/26/2022 | 1/26/2022 | 6/1/2020 | Foreclosure Expense Assessment | | 235 | 0 | ($510.00) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($6,616.87) | $.00 | $318.80 | $.00 |
| 2/17/2022 | 2/17/2022 | 2/1/2022 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($6,616.87) | ($63.76) | $382.56 | $.00 |
| 3/3/2022 | 3/3/2022 | 6/1/2020 | Foreclosure Expense Assessment | | 235 | 0 | ($1.13) | $.00 | $415,879.17 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($6,616.87) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 6/1/2020 | Unapplied Payment | 3000-47-HHF-BC | 0 | 156538 | $33,347.88 | $.00 | $415,879.17 | $0.00 | $.00 | $33,347.88 | $33,347.88 | $.00 | ($6,616.87) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 6/1/2020 | Unapplied Payment Reversal | 45-BC | 0 | 156547 | ($33,347.88) | $.00 | $415,879.17 | $0.00 | $.00 | ($33,347.88) | $.00 | $.00 | ($6,616.87) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 6/1/2020 | Regular Payment | 45-BC | 0 | 156547 | $1,480.17 | $581.99 | $415,297.18 | $0.00 | $693.13 | $.00 | $.00 | $205.05 | ($6,411.82) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 7/1/2020 | Regular Payment | 45-BC | 0 | 156547 | $1,480.17 | $582.96 | $414,714.22 | $0.00 | $692.16 | $.00 | $.00 | $205.05 | ($6,206.77) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 8/1/2020 | Regular Payment | 45-BC | 0 | 156547 | $1,480.17 | $583.93 | $414,130.29 | $0.00 | $691.19 | $.00 | $.00 | $205.05 | ($6,001.72) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 9/1/2020 | Regular Payment | 45-BC | 0 | 156547 | $1,480.17 | $584.90 | $413,545.39 | $0.00 | $690.22 | $.00 | $.00 | $205.05 | ($5,796.67) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 10/1/2020 | Regular Payment | 45-BC | 0 | 156547 | $1,480.17 | $585.88 | $412,959.51 | $0.00 | $689.24 | $.00 | $.00 | $205.05 | ($5,591.62) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 11/1/2020 | Regular Payment | 45-BC | 0 | 156547 | $1,480.17 | $586.85 | $412,372.66 | $0.00 | $688.27 | $.00 | $.00 | $205.05 | ($5,386.57) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 12/1/2020 | Regular Payment | 45-BC | 0 | 156547 | $1,480.17 | $587.83 | $411,784.83 | $0.00 | $687.29 | $.00 | $.00 | $205.05 | ($5,181.52) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 1/1/2021 | Regular Payment | 45-BC | 0 | 156547 | $1,480.17 | $588.81 | $411,196.02 | $0.00 | $686.31 | $.00 | $.00 | $205.05 | ($4,976.47) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 2/1/2021 | Regular Payment | 45-BC | 0 | 156547 | $1,480.17 | $589.79 | $410,606.23 | $0.00 | $685.33 | $.00 | $.00 | $205.05 | ($4,771.42) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 3/1/2021 | Regular Payment | 45-BC | 0 | 156547 | $1,480.17 | $590.78 | $410,015.45 | $0.00 | $684.34 | $.00 | $.00 | $205.05 | ($4,566.37) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 4/1/2021 | Regular Payment | 45-BC | 0 | 156547 | $1,480.17 | $591.76 | $409,423.69 | $0.00 | $683.36 | $.00 | $.00 | $205.05 | ($4,361.32) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 5/1/2021 | Regular Payment | 45-BC | 0 | 156547 | $1,480.17 | $592.75 | $408,830.94 | $0.00 | $682.37 | $.00 | $.00 | $205.05 | ($4,156.27) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 6/1/2021 | Regular Payment | 45-BC | 0 | 156547 | $1,480.17 | $593.74 | $408,237.20 | $0.00 | $681.38 | $.00 | $.00 | $205.05 | ($3,951.22) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 7/1/2021 | Regular Payment | 45-BC | 0 | 156547 | $1,480.17 | $594.72 | $407,642.48 | $0.00 | $680.40 | $.00 | $.00 | $205.05 | ($3,746.17) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 8/1/2021 | Regular Payment | 45-BC | 0 | 156547 | $1,480.17 | $595.72 | $407,046.76 | $0.00 | $679.40 | $.00 | $.00 | $205.05 | ($3,541.12) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 9/1/2021 | Regular Payment | 45-BC | 0 | 156547 | $1,592.19 | $596.71 | $406,450.05 | $0.00 | $678.41 | $.00 | $.00 | $317.07 | ($3,224.05) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 10/1/2021 | Regular Payment | 45-BC | 0 | 156547 | $1,592.19 | $597.70 | $405,852.35 | $0.00 | $677.42 | $.00 | $.00 | $317.07 | ($2,906.98) | $.00 | $382.56 | $.00 |

| | Borrower: CUERVO | | | | | Telephone: | | | | SSN: *****9870 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Effective Date | Transaction Date | Due Date | Transaction Description | Batch Desc | Sub Code | Batch Id | Trans. Amt | Principal Amount | Principal Balance | Arrearage / Forbearance Prin | Interest Amount | Unapplied Amount | Unapplied Balance | Escrow Amount | Escrow Balance | Late Charge Amt | Late Charge Balance | Assistance Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/4/2022 | 3/7/2022 | 11/1/2021 | Regular Payment | 45-BC | 0 | 156547 | $1,592.19 | $598.70 | $405,253.65 | $0.00 | $676.42 | $.00 | $.00 | $317.07 | ($2,589.91) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 12/1/2021 | Regular Payment | 45-BC | 0 | 156547 | $1,592.19 | $599.70 | $404,653.95 | $0.00 | $675.42 | $.00 | $.00 | $317.07 | ($2,272.84) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 1/1/2022 | Regular Payment | 45-BC | 0 | 156547 | $1,592.19 | $600.70 | $404,053.25 | $0.00 | $674.42 | $.00 | $.00 | $317.07 | ($1,955.77) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 2/1/2022 | Regular Payment | 45-BC | 0 | 156547 | $1,592.19 | $601.70 | $403,451.55 | $0.00 | $673.42 | $.00 | $.00 | $317.07 | ($1,638.70) | $.00 | $382.56 | $.00 |
| 3/4/2022 | 3/7/2022 | 3/1/2022 | Regular Payment | 45-BC | 0 | 156547 | $1,592.19 | $602.70 | $402,848.85 | $0.00 | $672.42 | $.00 | $.00 | $317.07 | ($1,321.63) | $.00 | $382.56 | $.00 |
| 3/29/2022 | 3/29/2022 | 4/10/2022 | County Tax Disbursement | Property Taxes SB 3/29/22 | 30 | 159599 | ($3,139.01) | $.00 | $402,848.85 | $0.00 | $.00 | $.00 | $.00 | ($3,139.01) | ($4,460.64) | $.00 | $382.56 | $.00 |
| 4/11/2022 | 4/11/2022 | 4/1/2022 | Unapplied Payment | 3000-41548 | 0 | 161610 | $1,480.17 | $.00 | $402,848.85 | $0.00 | $.00 | $1,480.17 | $1,480.17 | $.00 | ($4,460.64) | $.00 | $382.56 | $.00 |
| 4/11/2022 | 4/11/2022 | 4/1/2022 | Unapplied Payment Reversal | 45-PA | 0 | 161633 | ($1,480.17) | $.00 | $402,848.85 | $0.00 | $.00 | ($1,480.17) | $.00 | $.00 | ($4,460.64) | $.00 | $382.56 | $.00 |
| 4/11/2022 | 4/11/2022 | 4/1/2022 | Regular Payment with Adjustment | 45-PA | 0 | 161634 | $1,480.17 | $603.71 | $402,245.14 | $0.00 | $671.41 | $.00 | $.00 | $205.05 | ($4,255.59) | $.00 | $382.56 | $.00 |
| 5/9/2022 | 5/10/2022 | 5/1/2022 | Unapplied Payment | EKA Dep (3000-EK01 -PA) | 0 | 165822 | $1,500.00 | $.00 | $402,245.14 | $0.00 | $.00 | $1,500.00 | $1,500.00 | $.00 | ($4,255.59) | $.00 | $382.56 | $.00 |
| 5/9/2022 | 5/10/2022 | 5/1/2022 | Unapplied Payment Reversal | 45-PA | 0 | 165918 | ($1,500.00) | $.00 | $402,245.14 | $0.00 | $.00 | ($1,500.00) | $.00 | $.00 | ($4,255.59) | $.00 | $382.56 | $.00 |
| 5/9/2022 | 5/10/2022 | 5/1/2022 | Regular Payment with Adjustment | 45-PA | 0 | 165919 | $1,500.00 | $604.71 | $401,640.43 | $0.00 | $670.41 | $.00 | $.00 | $224.88 | ($4,030.71) | $.00 | $382.56 | $.00 |
| 6/14/2022 | 6/14/2022 | 6/1/2022 | Regular Payment with Adjustment | 3000-41548 | 0 | 170547 | $1,592.00 | $605.72 | $401,034.71 | $0.00 | $669.40 | $.00 | $.00 | $316.88 | ($3,713.83) | $.00 | $382.56 | $.00 |
| 6/17/2022 | 6/17/2022 | 7/9/2022 | Homeowners Policy Disbursement | HOI | 15 | 171016 | ($846.00) | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | ($846.00) | ($4,559.83) | $.00 | $382.56 | $.00 |
| 7/17/2022 | 7/19/2022 | 7/1/2022 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($4,559.83) | ($63.76) | $446.32 | $.00 |
| 8/17/2022 | 8/17/2022 | 8/1/2022 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($4,559.83) | ($63.76) | $510.08 | $.00 |
| 9/17/2022 | 9/17/2022 | 9/1/2022 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($4,559.83) | ($63.76) | $573.84 | $.00 |
| 10/17/2022 | 10/18/2022 | 10/1/2022 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($4,559.83) | ($63.76) | $637.60 | $.00 |
| 11/17/2022 | 11/17/2022 | 11/1/2022 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($4,559.83) | ($63.76) | $701.36 | $.00 |
| 11/29/2022 | 11/29/2022 | 12/10/2022 | County Tax Disbursement | property taxes MLR 11/29/22 | 30 | 193275 | ($3,197.95) | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | ($3,197.95) | ($7,757.78) | $.00 | $701.36 | $.00 |
| 12/17/2022 | 12/17/2022 | 12/1/2022 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($7,757.78) | ($63.76) | $765.12 | $.00 |

| | Borrower: CUERVO | | | Telephone: | | | | SSN: *****9870 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Effective Date | Transaction Date | Due Date | Transaction Description | Batch Desc | Sub Code | Batch Id | Trans. Amt | Principal Amount | Principal Balance | Arrearage / Forbearance Prin | Interest Amount | Unapplied Amount | Unapplied Balance | Escrow Amount | Escrow Balance | Late Charge Amt | Late Charge Balance | Assistance Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/17/2023 | 1/17/2023 | 1/1/2023 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($7,757.78) | ($63.76) | $828.88 | $.00 |
| 2/17/2023 | 2/17/2023 | 2/1/2023 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($7,757.78) | ($63.76) | $892.64 | $.00 |
| 3/17/2023 | 3/17/2023 | 3/1/2023 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($7,757.78) | ($63.76) | $956.40 | $.00 |
| 3/27/2023 | 3/27/2023 | 4/10/2023 | County Tax Disbursement | property taxes MLR 03/27/23 | 30 | 208288 | ($3,197.95) | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | ($3,197.95) | ($10,955.73) | $.00 | $956.40 | $.00 |
| 4/17/2023 | 4/18/2023 | 4/1/2023 | Late Charge Assessment | | 0 | 0 | ($63.76) | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($10,955.73) | ($63.76) | $1,020.16 | $.00 |
| 5/30/2023 | 5/30/2023 | 7/1/2022 | Foreclosure Expense Assessment | | 235 | 0 | ($570.00) | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($10,955.73) | $.00 | $1,020.16 | $.00 |
| 7/6/2023 | 7/6/2023 | 7/1/2022 | Foreclosure Expense Assessment | | 235 | 0 | ($1,735.77) | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($10,955.73) | $.00 | $1,020.16 | $.00 |
| 7/28/2023 | 8/3/2023 | 7/1/2022 | Foreclosure Expense Payment | 3000-47-HAF-PA | 235 | 225785 | $1,081.13 | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($10,955.73) | $.00 | $1,020.16 | $.00 |
| 7/28/2023 | 8/3/2023 | 7/1/2022 | Stipulation Unapplied Payment | 3000-47-HAF-PA | 0 | 225785 | $1,045.00 | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $1,045.00 | $.00 | ($10,955.73) | $.00 | $1,020.16 | $.00 |
| 7/28/2023 | 8/3/2023 | 7/1/2022 | Late Charge Payment | 3000-47-HAF-PA | 0 | 225785 | $1,020.16 | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $1,045.00 | $.00 | ($10,955.73) | $1,020.16 | $.00 | $.00 |
| 7/28/2023 | 8/3/2023 | 7/1/2022 | Escrow Only Payment | 3000-47-HAF-PA | 0 | 225785 | $4,096.21 | $.00 | $401,034.71 | $0.00 | $.00 | $.00 | $1,045.00 | $4,096.21 | ($6,859.52) | $.00 | $.00 | $.00 |
| 7/28/2023 | 8/3/2023 | 7/1/2022 | Regular Payment | 3000-47-HAF-PA | 0 | 225785 | $2,016.88 | $606.73 | $400,427.98 | $0.00 | $668.39 | $.00 | $1,045.00 | $741.76 | ($6,117.76) | $.00 | $.00 | $.00 |
| 7/28/2023 | 8/3/2023 | 8/1/2022 | Regular Payment | 3000-47-HAF-PA | 0 | 225785 | $2,016.88 | $607.74 | $399,820.24 | $0.00 | $667.38 | $.00 | $1,045.00 | $741.76 | ($5,376.00) | $.00 | $.00 | $.00 |
| 7/28/2023 | 8/3/2023 | 9/1/2022 | Regular Payment | 3000-47-HAF-PA | 0 | 225785 | $2,016.88 | $608.75 | $399,211.49 | $0.00 | $666.37 | $.00 | $1,045.00 | $741.76 | ($4,634.24) | $.00 | $.00 | $.00 |
| 7/28/2023 | 8/3/2023 | 10/1/2022 | Regular Payment | 3000-47-HAF-PA | 0 | 225785 | $2,016.88 | $609.77 | $398,601.72 | $0.00 | $665.35 | $.00 | $1,045.00 | $741.76 | ($3,892.48) | $.00 | $.00 | $.00 |
| 7/28/2023 | 8/3/2023 | 11/1/2022 | Regular Payment | 3000-47-HAF-PA | 0 | 225785 | $2,016.88 | $610.78 | $397,990.94 | $0.00 | $664.34 | $.00 | $1,045.00 | $741.76 | ($3,150.72) | $.00 | $.00 | $.00 |
| 7/28/2023 | 8/3/2023 | 12/1/2022 | Regular Payment | 3000-47-HAF-PA | 0 | 225785 | $2,016.88 | $611.80 | $397,379.14 | $0.00 | $663.32 | $.00 | $1,045.00 | $741.76 | ($2,408.96) | $.00 | $.00 | $.00 |
| 7/28/2023 | 8/3/2023 | 1/1/2023 | Regular Payment | 3000-47-HAF-PA | 0 | 225785 | $2,016.88 | $612.82 | $396,766.32 | $0.00 | $662.30 | $.00 | $1,045.00 | $741.76 | ($1,667.20) | $.00 | $.00 | $.00 |
| 7/28/2023 | 8/3/2023 | 2/1/2023 | Regular Payment | 3000-47-HAF-PA | 0 | 225785 | $2,016.88 | $613.84 | $396,152.48 | $0.00 | $661.28 | $.00 | $1,045.00 | $741.76 | ($925.44) | $.00 | $.00 | $.00 |

**Loan History - General**

| | Borrower: CUERVO | | | Telephone: | | | | SSN: *****9870 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Effective Date | Transaction Date | Due Date | Transaction Description | Batch Desc | Sub Code | Batch Id | Trans. Amt | Principal Amount | Principal Balance | Arrearage / Forbearance Prin | Interest Amount | Unapplied Amount | Unapplied Balance | Escrow Amount | Escrow Balance | Late Charge Amt | Late Charge Balance | Assistance Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/28/2023 | 8/3/2023 | 3/1/2023 | Regular Payment | 3000-47-HAF-PA | 0 | 225785 | $2,016.88 | $614.87 | $395,537.61 | $0.00 | $660.25 | $.00 | $.00 | $1,045.00 | $741.76 | ($183.68) | $.00 | $.00 |
| 7/28/2023 | 8/3/2023 | 4/1/2023 | Regular Payment | 3000-47-HAF-PA | 0 | 225785 | $2,016.88 | $615.89 | $394,921.72 | $0.00 | $659.23 | $.00 | $.00 | $1,045.00 | $741.76 | $558.08 | $.00 | $.00 |
| 7/28/2023 | 8/3/2023 | 5/1/2023 | Regular Payment | 3000-47-HAF-PA | 0 | 225785 | $2,016.88 | $616.92 | $394,304.80 | $0.00 | $658.20 | $.00 | $.00 | $1,045.00 | $741.76 | $1,299.84 | $.00 | $.00 |
| 7/28/2023 | 8/3/2023 | 6/1/2023 | Regular Payment | 3000-47-HAF-PA | 0 | 225785 | $2,016.88 | $617.95 | $393,686.85 | $0.00 | $657.17 | $.00 | $.00 | $1,045.00 | $741.76 | $2,041.60 | $.00 | $.00 |
| 7/28/2023 | 8/3/2023 | 7/1/2023 | Regular Payment | 3000-47-HAF-PA | 0 | 225785 | $2,250.99 | $618.98 | $393,067.87 | $0.00 | $656.14 | $.00 | $.00 | $1,045.00 | $975.87 | $3,017.47 | $.00 | $.00 |
| 7/28/2023 | 8/3/2023 | 8/1/2023 | Unapplied Payment | 3000-47-HAF-PA | 0 | 225785 | $2,016.88 | $.00 | $393,067.87 | $0.00 | $.00 | $2,016.88 | $3,061.88 | $.00 | $3,017.47 | $.00 | $.00 |
| 8/3/2023 | 8/3/2023 | 8/1/2023 | Stipulation Unapplied Payment Reversal | 45-PA | 0 | 225783 | ($1,045.00) | $.00 | $393,067.87 | $0.00 | $.00 | $.00 | $2,016.88 | $.00 | $3,017.47 | $.00 | $.00 |
| 8/3/2023 | 8/3/2023 | 8/1/2023 | Foreclosure Expense Payment | 45-PA | 235 | 225783 | $1,045.00 | $.00 | $393,067.87 | $0.00 | $.00 | $.00 | $2,016.88 | $.00 | $3,017.47 | $.00 | $.00 |
| 8/2/2023 | 8/3/2023 | 8/1/2023 | Escrow Only Payment Reversal | 45-HAF-BC | 0 | 225802 | ($352.50) | $.00 | $393,067.87 | $0.00 | $.00 | $.00 | $2,016.88 | ($352.50) | $2,664.97 | $.00 | $.00 |
| 8/2/2023 | 8/3/2023 | 8/1/2023 | Stipulation Unapplied Payment | 45-HAF-BC | 0 | 225802 | $352.50 | $.00 | $393,067.87 | $0.00 | $.00 | $.00 | $2,369.38 | $.00 | $2,664.97 | $.00 | $.00 |
| 7/28/2023 | 8/3/2023 | 8/1/2023 | Regular Payment | 45-HAF-BC | 0 | 225802 | $2,250.99 | $620.01 | $392,447.86 | $0.00 | $655.11 | $.00 | $2,369.38 | $975.87 | $3,640.84 | $.00 | $.00 |
| 8/2/2023 | 8/3/2023 | 9/1/2023 | Stipulation Unapplied Payment Reversal | 45-HAF-BC | 0 | 225802 | ($352.50) | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $2,016.88 | $.00 | $3,640.84 | $.00 | $.00 |
| 8/2/2023 | 8/3/2023 | 9/1/2023 | Unapplied Payment Reversal | 45-HAF-BC | 0 | 225802 | ($1,898.49) | $.00 | $392,447.86 | $0.00 | $.00 | ($1,898.49) | $118.39 | $.00 | $3,640.84 | $.00 | $.00 |
| 8/2/2023 | 8/3/2023 | 8/1/2023 | Regular Payment Reversal | 45-HAF-BC | 0 | 225802 | ($2,250.99) | ($620.01) | $393,067.87 | $0.00 | ($655.11) | $.00 | $118.39 | ($975.87) | $2,664.97 | $.00 | $.00 |
| 8/2/2023 | 8/3/2023 | 8/1/2023 | Stipulation Unapplied Payment | 45-HAF-BC | 0 | 225802 | $2,250.99 | $.00 | $393,067.87 | $0.00 | $.00 | $.00 | $2,369.38 | $.00 | $2,664.97 | $.00 | $.00 |
| 8/2/2023 | 8/3/2023 | 8/1/2023 | Stipulation Unapplied Payment Reversal | 45-HAF-BC | 0 | 225802 | ($352.50) | $.00 | $393,067.87 | $0.00 | $.00 | $.00 | $2,016.88 | $.00 | $2,664.97 | $.00 | $.00 |
| 8/2/2023 | 8/3/2023 | 8/1/2023 | Escrow Only Payment | 45-HAF-BC | 0 | 225802 | $352.50 | $.00 | $393,067.87 | $0.00 | $.00 | $.00 | $2,016.88 | $352.50 | $3,017.47 | $.00 | $.00 |
| 9/1/2023 | 9/1/2023 | 8/1/2023 | Forced Place Insur Disbursement | FPI Escrow | 12 | 229795 | ($858.61) | $.00 | $393,067.87 | $0.00 | $.00 | $.00 | $2,016.88 | ($858.61) | $2,158.86 | $.00 | $.00 |

Contains Customer Private Information - handle securely.

## Loan History - General

| Borrower: CUERVO | | Telephone: | | SSN: *****9870 |
|---|---|---|---|---|

| Effective Date | Transaction Date | Due Date | Transaction Description | Batch Desc | Sub Code | Batch Id | Trans. Amt | Principal Amount | Principal Balance | Arrearage / Forbearance Prin | Interest Amount | Unapplied Amount | Unapplied Balance | Escrow Amount | Escrow Balance | Late Charge Amt | Late Charge Balance | Assistance Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/8/2023 | 9/11/2023 | 8/1/2023 | Stipulation Unapplied Payment Reversal | 45-HAF-BC | 0 | 230747 | ($1,898.49) | $.00 | $393,067.87 | $0.00 | $.00 | $.00 | $.00 | $118.39 | $2,158.86 | $.00 | $.00 | $.00 |
| 8/3/2023 | 9/11/2023 | 8/1/2023 | Regular Payment with Adjustment | 45-HAF-BC | 0 | 230747 | $2,016.88 | $620.01 | $392,447.86 | $0.00 | $655.11 | $.00 | $118.39 | $741.76 | $2,900.62 | $.00 | $.00 | $.00 |
| 9/8/2023 | 9/11/2023 | 9/1/2023 | Unapplied Payment Reversal | 45-HAF-BC | 0 | 230747 | ($118.39) | $.00 | $392,447.86 | $0.00 | $.00 | ($118.39) | $.00 | $.00 | $2,900.62 | $.00 | $.00 | $.00 |
| 9/21/2023 | 9/21/2023 | 9/1/2023 | Foreclosure Expense Assessment | | 235 | 0 | ($141.00) | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $.00 | $2,900.62 | $.00 | $.00 | $.00 |
| 10/2/2023 | 10/2/2023 | 9/1/2023 | Forced Place Insur Disbursement | FPI Escrow | 12 | 233740 | ($492.13) | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | ($492.13) | $2,408.49 | $.00 | $.00 | $.00 |
| 10/19/2023 | 10/19/2023 | 9/1/2023 | Escrow Only Payment | 43-FPI Refund | 0 | 236258 | $360.80 | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $360.80 | $2,769.29 | $.00 | $.00 | $.00 |
| 10/20/2023 | 10/20/2023 | 9/8/2023 | Homeowners Policy Disbursement | HOI | 15 | 236424 | ($970.00) | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | ($970.00) | $1,799.29 | $.00 | $.00 | $.00 |
| 11/22/2023 | 11/22/2023 | 12/10/2023 | County Tax Disbursement | PropertyTax-112223-tt | 30 | 240386 | ($3,252.63) | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | ($3,252.63) | ($1,453.34) | $.00 | $.00 | $.00 |
| 12/31/2023 | 12/31/2023 | 9/1/2023 | Int on Escrow Payment | IOE CA | 0 | 244866 | $15.21 | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $15.21 | ($1,438.13) | $.00 | $.00 | $.00 |
| 1/25/2024 | 1/25/2024 | 9/1/2023 | Unapplied Payment | 3000-41548 | 0 | 248555 | $1,800.00 | $.00 | $392,447.86 | $0.00 | $.00 | $1,800.00 | $1,800.00 | $.00 | ($1,438.13) | $.00 | $.00 | $.00 |
| 2/6/2024 | 2/6/2024 | 9/1/2023 | Unapplied Payment Reversal | 45-vs | 0 | 250133 | ($1,800.00) | $.00 | $392,447.86 | $0.00 | $.00 | ($1,800.00) | $.00 | $.00 | ($1,438.13) | $.00 | $.00 | $.00 |
| 2/6/2024 | 2/6/2024 | 9/1/2023 | Foreclosure Expense Payment | 45-vs | 235 | 250133 | $831.77 | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($1,438.13) | $.00 | $.00 | $.00 |
| 2/6/2024 | 2/6/2024 | 9/1/2023 | Escrow Only Payment | 45-vs | 0 | 250133 | $968.23 | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $968.23 | ($469.90) | $.00 | $.00 | $.00 |
| 3/15/2024 | 3/15/2024 | 9/1/2023 | Investor Loan Sale | | 0 | 255260 | $.00 | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($469.90) | $.00 | $.00 | $.00 |
| 3/15/2024 | 3/15/2024 | 9/1/2023 | Inv Loan Purchase | | 0 | 255260 | $.00 | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($469.90) | $.00 | $.00 | $.00 |
| 3/18/2024 | 3/18/2024 | 4/10/2024 | County Tax Disbursement | PropertyTax-031824-tt2 | 30 | 255762 | ($3,252.63) | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | ($3,252.63) | ($3,722.53) | $.00 | $.00 | $.00 |
| 3/22/2024 | 3/22/2024 | 9/1/2023 | Unapplied Payment | 3000-41548 | 0 | 256511 | $1,800.00 | $.00 | $392,447.86 | $0.00 | $.00 | $1,800.00 | $1,800.00 | $.00 | ($3,722.53) | $.00 | $.00 | $.00 |
| 4/3/2024 | 4/3/2024 | 9/1/2023 | Unapplied Payment Reversal | 45-BC | 0 | 257905 | ($1,800.00) | $.00 | $392,447.86 | $0.00 | $.00 | ($1,800.00) | $.00 | $.00 | ($3,722.53) | $.00 | $.00 | $.00 |
| 4/3/2024 | 4/3/2024 | 9/1/2023 | Escrow Only Payment | 45-BC | 0 | 257905 | $1,800.00 | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $1,800.00 | ($1,922.53) | $.00 | $.00 | $.00 |

| | | | Borrower: CUERVO | | | | Telephone: | | | | SSN: *****9870 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Effective Date | Transaction Date | Due Date | Transaction Description | Batch Desc | Sub Code | Batch Id | Trans. Amt | Principal Amount | Principal Balance | Arrearage / Forbearance Prin | Interest Amount | Unapplied Amount | Unapplied Balance | Escrow Amount | Escrow Balance | Late Charge Amt | Late Charge Balance | Assistance Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/30/2024 | 4/30/2024 | 9/1/2023 | Legal Fee Assessment | | 1 | 0 | ($570.00) | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($1,922.53) | $.00 | $.00 | $.00 |
| 5/23/2024 | 5/23/2024 | 9/1/2023 | Foreclosure Expense Assessment | | 235 | 0 | ($1,550.84) | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($1,922.53) | $.00 | $.00 | $.00 |
| 5/23/2024 | 5/23/2024 | 9/1/2023 | Legal Fee Assessment | | 1 | 0 | ($380.00) | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($1,922.53) | $.00 | $.00 | $.00 |
| 8/15/2024 | 8/15/2024 | 9/1/2023 | Foreclosure Expense Assessment | | 235 | 0 | ($170.98) | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($1,922.53) | $.00 | $.00 | $.00 |
| 8/15/2024 | 8/15/2024 | 9/1/2023 | Legal Fee Assessment | | 1 | 0 | ($190.00) | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($1,922.53) | $.00 | $.00 | $.00 |
| 8/26/2024 | 8/26/2024 | 9/8/2024 | Homeowners Policy Disbursement | HOI | 15 | 276256 | ($1,416.00) | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | ($1,416.00) | ($3,338.53) | $.00 | $.00 | $.00 |
| 9/19/2024 | 9/19/2024 | 9/1/2023 | Legal Fee Assessment | | 1 | 0 | ($400.00) | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($3,338.53) | $.00 | $.00 | $.00 |
| 10/17/2024 | 10/17/2024 | 9/1/2023 | Legal Fee Assessment | | 1 | 0 | ($800.00) | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($3,338.53) | $.00 | $.00 | $.00 |
| 10/17/2024 | 10/17/2024 | 9/1/2023 | Legal Fee Assessment | | 1 | 0 | ($550.00) | $.00 | $392,447.86 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($3,338.53) | $.00 | $.00 | $.00 |
| 10/31/2024 | 10/31/2024 | 9/1/2023 | Unapplied Payment | EKA Dep (3000-EK01-CP) | 0 | 284028 | $1,800.00 | $.00 | $392,447.86 | $0.00 | $.00 | $1,800.00 | $1,800.00 | $.00 | ($3,338.53) | $.00 | $.00 | $.00 |
| | | | Totals: | | | | $43,579.33 | $439,310.48 | | | $26,298.37 | $1,800.00 | | ($3,338.53) | | $.00 | | $.00 |

Contains Customer Private Information - handle securely.